UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MARIA ARNOLD, et al.                                                                                         PLAINTIFF

v.                                                                                CIVIL ACTION NO. 3:05-CV-649-S

JAMES WILDER, et al.                                                                                        DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on the motion of the defendant, Dewey Cornell, Jr. ("Cornell"), for judgment on the pleadings. The case involves the plaintiff's claims under 28 U.S.C. §1981 and claims alleging several constitutional violations, as well as various state law claims over which this court has supplemental jurisdiction. For the reasons set forth below, the court will grant the defendant's motion for judgment on the pleadings.

### FACTS

In this suit, Cornell is named as a defendant in his individual capacity. He is also being sued in his official capacity as Mayor of the City of Strathmoor Village, a sixth-class Kentucky city, which is also a defendant. This action arises from an incident that occurred on October 25, 2003 at the home of the plaintiff, Maria Arnold ("Arnold") who lives in the City of Kingsley, another sixth-class Kentucky city. On that day, Strathmoor Village Police Officer Jim Wilder ("Wilder") responded to a complaint made by the Mayor of the City of Kingsley, Phyllis Ann Breuer ("Breuer"). Breuer, who lived across the street from Arnold, reported that children playing in Arnold's yard were causing a

disturbance.

Wilder worked for the City of Strathmoor. However, police officers employed by the City of Strathmoor served the City of Kingsley as well. Thus, Wilder was dispatched to Arnold's home on October 25, 2003. When Wilder arrived, an altercation between he and Arnold arose, resulting in Arnold's arrest. She was charged with Disorderly Conduct, two counts of Assault 3rd Degree, Resisting Arrest and Escape 2nd Degree. Arnold was acquitted of all charges in a subsequent jury trial. She now sues Wilder, the City of Strathmoor Village, Cornell, the City of Kingsley and Breuer.

At issue in the present motion are only those claims asserted against Cornell in his individual capacity. He was not present at the time of the arrest. Thus, most of the allegations in the complaint (i.e. lack of probable cause in the arrest and prosecution, use of excessive force, improper hiring and training of police officers) apply to Wilder or the City of Strathmoor Village as a governmental entity. Arnold asserts only three claims against Cornell in his individual capacity. Count XIV alleges abuse of process and malicious prosecution against all defendants, including Cornell; and Count XV alleges intentional infliction of emotional distress against all defendants, including Cornell. The factual basis for these claims against Cornell stem from his appearance at pretrial proceedings in Arnold's criminal case. While present at these proceedings, Cornell urged Arnold to stipulate to probable cause and agree not to pursue a civil suit in return for a dismissal of the criminal charges.

## DISCUSSION

Cornell has filed a motion for judgment on the pleadings. However, Fed.R.Civ.P. 12(c) directs the court to treat this motion as one for summary judgment because matters outside the pleadings were presented to the court.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party bears the burden of establishing these elements *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Not every factual dispute between the parties prevents summary judgment. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). To preclude summary judgment, the disputed facts must be material, such that "they might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The dispute must also be genuine, such that "if the facts were proven at trial, a reasonable jury could return a verdict for the non-moving party." *Id.* "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp.*, 822 F.2d at 1435. In making these determinations, the court views all facts and inferences in a light most favorable to the nonmoving party. *Id.*

I.

Arnold claims that Cornell committed the tort of abuse of process when he attended proceedings in her criminal case and encouraged her to stipulate to probable cause and forbear a civil lawsuit in exchange for dismissal of the criminal charges. There are two necessary elements for a successful abuse of process claim. First, there must be an ulterior purpose; and second, there must be a willful act in the use of the process not proper in the regular conduct of the proceeding. *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998).

Arnold identifies the ulterior purpose as Cornell's desire to prevent the City of Strathmoor

Village from being sued by Arnold in a civil action. *See Plaintiff's Response* (DN 31), p. 4-5. Cornell did present an agreement to her, which was titled "Covenant to Not Sue." *See id.*, Exhibit A. Arnold argues that this agreement evidences the requisite ulterior purpose citing *Flynn v. Songer*, 399 S.W.2d 491 (Ky. 1966), in which a Kentucky court noted that the ulterior purpose "usually takes the form of coercion to obtain a collateral advantage, nor properly involved in the proceeding itself . . ." Although Arnold does not explicitly identify the willful act, it appears that she relies upon Cornell's attempt to "induce" or "coerce" her into signing the agreement to satisfy the willful act requirement.

Cornell, on the other hand, argues that his motive was not an improper one. He acknowledges attempting to procure a "settlement" with Arnold, noting that settlements are favored by the court system. *See Defendant's Motion for Judgment on the Pleadings* (DN 18), p. 8-9. Regardless of whether Cornell had an ulterior purpose, Arnold's abuse of process claim cannot be maintained against him. He did not "use the process" in the way that is required under *Flynn*. "The cause of action for abuse of process has been defined as 'the technical designation of the irregular or wrongful employment of a judicial proceeding.'" *Raine v. Drasin,* 621 S.W.2d 895 (Ky. 1981) (quoting *Stoll Oil Refining Co. v. Pierce*, 337 S.W.2d 263, 366 (1970)).

Inherent in the definition of this tort is the defendant's ability to "employ," or at least play some role in, a judicial proceeding. Cornell, mayor of a Kentucky sixth-class city, played no role in the criminal proceedings against Arnold. He was not present at the time of her arrest and did not learn of such arrest until after it occurred; and he was not a party to the subsequent criminal proceedings. *Compare Flynn v. Songer*, 399 S.W.2d 491 (Ky. 1966) (defendant initiated the plaintiff's arrest by filing a criminal complaint and supporting affidavit); *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998) (defendants employed judicial proceedings when they appealed a county planning commission's

decision regarding a zoning issue). Cornell played no similar role in Arnold's criminal proceedings. Cornell had no coercive power over Arnold during the course of her criminal case. Although the agreement he presented to Arnold did purport to dismiss the criminal charges against her if she stipulated to probable cause and entered into the covenant not to sue, Cornell had no authority to make such an agreement. The attorney for the Commonwealth of Kentucky and the court are the only parties with the authority to dismiss an indictment or criminal complaint. *See e.g., Commonwealth v. Isham*, 98 S.W.3d 59, 62 (Ky. 2003). Accordingly, Cornell could not abuse a process over which he had no authority or control.

II.

Arnold also claims that Cornell committed the tort of malicious prosecution by "perpetuat[ing] and participat[ing] in the institution of judicial proceedings against [Arnold]." Complaint, ¶ 85. "Abuse of process differs from malicious prosecution in that malicious prosecution consists of commencing an action or causing process to issue maliciously or without justification." *Simpson*, 962 S.W.2d at 394.

The Kentucky courts have clearly outlined the elements necessary to establish malicious prosecution:

> (1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceedings, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceedings.

*Broaddus v. Campbell*, 911 S.W.2d 281, 283 (1995); *Raine v. Draisin*, 621 S.W.2d 895, 899 (Ky. 1981). Cornell contends that the second and fifth elements are absent in the instant case. *See Defendant's Motion for Judgment on the Pleadings* (DN 18), pp.11-14.

As previously discussed, Cornell had no power to initiate or terminate the criminal proceedings

5

against Arnold. Any representations he made to the contrary were simply untrue. The attorney for the Commonwealth and the trial court hold exclusive authority to dismiss criminal proceedings. Cornell was not involved in the arrest or the charging of Arnold. As he played absolutely no role in initiating or perpetuating the criminal proceedings, they were not instituted or continued at his "instance." Because at least one necessary element is missing, the malicious prosecution claim, as it pertains to Cornell in his individual capacity, cannot be maintained. Accordingly, the court will grant Cornell's motion for judgment on the pleadings on this count.

III.

The Kentucky courts have adopted Section 46 of the Restatement (Second) of Torts, which states in pertinent part: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to anyone is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *See Craft v. Rice*, 671 S.W.2d 247 (Ky. 1984). In her Response, Arnold identifies the purported outrageous conduct using the following language:

> Arnold, a mother of three children, was forcibly arrested, transported to jail and subjected to a criminal prosecution which resulted in a jury trial in Jefferson District Court. The outrageous conduct of Defendant Cornell as alleged in the complaint certainly rises to the level required to meet the [applicable] standard for the tort . . .

*Plaintiff's Response* (DN 31), p. 13. Interestingly, the conduct specified above had nothing to do with Cornell, acting in his individual capacity. Arnold does not even allege that Cornell played a role in those actions. In fact, she acknowledges that he did not witness the arrest and that he was "neither a witness nor any party to the proceedings in Jefferson District Court surrounding the criminal charges filed against" Arnold. *Complaint* (DN 4), ¶ 25.

Arnold cites *Kroger Co. v. Willgruber*, 920 S.W.2d 61 (Ky. 1996), arguing that the facts of that

6

case are similar to those at bar. In *Kroger*, the plaintiff, a former Kroger employee, was wrongfully discharged. Subsequently, Kroger management pressured him to sign release papers, misrepresented his eligibility for another position, sent him to interview in another state for a position when Kroger was "fully cognizant that no job would materialize," attempted to induce his wife into having him sign the release, and lied to the disability insurance carrier in order to wrongfully defeat or delay disability payments to which the plaintiff was entitled. *See id.* at 66. The case at bar bears little resemblance to the situation in *Kroger*.

Arnold has alleged that Cornell encouraged her to sign a covenant not to sue the City of Strathmoor Village and others. She has tendered the agreement that he presented to her. It appears that Cornell may have misrepresented his authority by suggesting that he could have criminal proceedings dismissed. That action, however, does not equate to the conduct found to be extreme and outrageous by the *Kroger* court; namely deliberately lying to the plaintiff and other third parties, attempting to delay the disability claims process thereby depriving the plaintiff of benefits to which he was entitled and sending the plaintiff on a wild goose chase in search of a nonexistent employment opportunity.

Furthermore, an essential element of an IIED claim is missing. "[T]here is a clearly developed paradigm for outrage [now IIED]: when actions or contact is intended only to cause extreme emotional distress to the victim." *Brewer v. Hillard*, 15 S.W.3d 1, 7-8 (1999). *Brewer* relied upon *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295 (Ky. Ct. App. 1993). The *Rigazio* court quoted Restatement (Second) of Torts, 47 cmt. a, which states in pertinent part:

> The rule stated in § 46 creates liability only where the actor intends to invade the interest in freedom from severe emotional distress. The fact that the actor intends to invade some other legally protected interest is insufficient to create liability where the only effect of his act is the creation of emotional distress . . .
>
> So too, where the actor's conduct is tortious solely because it involves a risk

of invading an interest other than the interest in freedom from emotional distress, the tortious quality of the act is insufficient to create liability for emotional distress alone.

Arnold has produced "no evidence from which it could be inferred that [Cornell] intended only to invade [Arnold's] interest in freedom from emotional distress." *Rigazio*, 853 S.W.2d at 299. His clear intent was to avoid civil liability for the City of Strathmoor Village, its elected officers and Wilder. The record is devoid of any evidence that Cornell intended to cause extreme emotional distress to Arnold. Absent this requisite intent, Arnold's IIED claim against Cornell in his individual capacity cannot lie.[1]

For the reasons set forth above, the court will grant the defendant's motion for judgment on the pleadings on all three claims relevant to this motion. A separate order will be entered herein this date in accordance with this opinion.

cc: Counsel of Record

---

[1] Cornell also asserts that Arnold cannot pursue her claims for abuse of process and malicious prosecution in addition to her claim for intentional infliction of emotional distress (IIED) because IIED is simply an action that "fills the gap" where other torts do not provide adequate remedies. Cornell cites *Rigazio*, 853 S.W.2d at 299 for the proposition that "where an actor's conduct amounts to the commission of one or more traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, . . . the tort of outrage [now IIED] will not lie." In response, Arnold maintains that abuse of process and malicious prosecution claims do not fall within the category of "traditional torts." *See Plaintiff's Response* (DN 31), p. 14. Because we find that all three claims against Cornell in his individual capacity fail on the merits, it is unnecessary to address this issue.