UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MARIA ARNOLD, et al.                                                                                    PLAINTIFF

v.                                                                              CIVIL ACTION NO. 3:04-CV-649-S

JAMES WILDER, et al.                                                                                  DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on the motion of the defendants, the City of Kingsley and Phillis Ann Breuer, individually and in her official capacity, for summary judgment. The case involves the plaintiff's constitutional claims under 28 U.S.C. §1981, as well as various state law claims over which this court has supplemental jurisdiction. For the reasons set forth below, the court will grant the defendants' motion for summary judgment.

## FACTS

This action arises from an incident that occurred on October 25, 2003 at the home of the plaintiff, Maria Arnold ("Arnold") who lives in the City of Kingsley ("Kingsley"), a sixth-class Kentucky city. On that day, Strathmoor Village Police Officer Jim Wilder ("Wilder") responded to a complaint made by the mayor of Kingsley, Phyllis Ann Breuer ("Breuer"). Breuer, who lived across the street from Arnold, reported that children playing in Arnold's yard and in neighboring yards and driveways were causing a disturbance.

Wilder worked for the City of Strathmoor ("Strathmoor"), another sixth-class Kentucky city.

However, police officers employed by Strathmoor served the neighboring Kingsley as well. Thus, Wilder was dispatched to Arnold's home on October 25, 2003. When Wilder arrived, an altercation between he and Arnold arose, resulting in Arnold's arrest. She was charged with Disorderly Conduct, two counts of Assault 3rd Degree, Resisting Arrest and Escape 2nd Degree. Arnold was acquitted of all charges in a subsequent jury trial. She has now sued Wilder, Strathmoor, Kingsley and Breuer.

However, this motion concerns only Kingsley and its mayor, Breuer, who has been sued in both her individual and official capacities. Arnold asserts a §1983 action against Kingsley for failure to properly train, supervise and counsel Wilder. She also asserts various state law vicarious liability claims against Kingsley for assault and outrage, as well as direct common law claims for negligent hiring, supervision and retention. She asserts additional claims against Breuer individually, including abuse of process and intentional infliction of emotional distress. Kingsley and Breuer have made a motion for summary judgment on all claims asserted against them.

## STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party bears the burden of establishing these elements *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Not every factual dispute between the parties prevents summary judgment. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). To preclude summary judgment, the disputed facts must be material, such that "they might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The dispute must also be genuine, such that "if the facts were

proven at trial, a reasonable jury could return a verdict for the non-moving party." *Id.* "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp.*, 822 F.2d at 1435. In making these determinations, the court views all facts and inferences in a light most favorable to the nonmoving party. *Id.*

## DISCUSSION

"A suit against an individual in [her] official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Michigan Dept. of State Police*, 68, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). Arnold's claims against Breuer in her official capacity, therefore, are one in the same with her claims against Kingsley.

### I.

Arnold asserts a federal claim under 28 U.S.C. §1983 against Kingsley for failure to properly train, supervise and counsel Wilder. *See* Complaint (DN 1), ¶¶ 59-60. These claims fail because Wilder was not an employee of Kingsley.

Kingsley and Strathmoor have operated under an inter-local agreement since May 3, 1995. *See* Defendant's Reply (DN 47), Exhibit A, *Inter-local Agreement*. Pursuant to the terms of this agreement, Strathmoor provides police services to Kingsley in exchange for an annual fee. This agreement unequivocally states that the officer patrolling Kingsley will "at all times during his patrol remain under the sole direction, jurisdiction and control of [Strathmoor] and [Kingsley] shall not

have authority of any kind to direct, supervise or otherwise control said police officer, nor shall such police officer be considered an officer, agent or employee of [Kingsley] for any purpose whatsoever." *Id.* at 3. Furthermore, the agreement states that "[i]t is expressly understood and agreed that all police officers provided by [Strathmoor] pursuant to this Agreement are employees of [Strathmoor]." The agreement was signed by then mayors of Strathmoor and Kingsley as well as by the Strathmoor police chief. The relevant language indicates that Wilder was not a Kingsley employee and that Kingsley had no duty to train Wilder. Kingsley cannot be liable for a claim of failure to train, supervise or counsel a non-employee.

The inter-local agreement conclusively establishes the parties' intention that Strathmoor police officers would not be Kingsley employees. The actions of the parties further substantiates that conclusion. For instance, Strathmoor paid Wilder's salary and bought his police cruiser, supplied him with gas, uniforms, weapons and all other supplies. *Cornell Depo.*, pp. 57-58. Kingsley did not compensate the police officers in any way. Rather, Kingsley paid Strathmoor pursuant to the inter-local agreement. *Breuer Depo.*, p. 41. Strathmoor officials hire, discipline and supervise the city police officers. *Cornell Depo.*, p. 59. Kingsley participates in none of these activities. These considerations are the types of factors the Kentucky courts have identified as relevant in determining whether a person is an employee of a principal. *See, e.g., Kentucky Unemployment Insurance Commission v. Landmark Community Newspapers of Ky., Inc.,* 91 S.W.3d 575 579 (2002).

There are many other traditional common law factors relevant to making such a determination; although no single factor is dispositive, "the chief criterion is the right to control the

4

details of the work." *Sturgill v. Barnes*, 300 S.W.2d 574, 577 (1957).  In the case at bar, Strathmoor undoubtedly had the right to control the details of the police work. Chief Reynolds, a Strathmoor employee, made such decisions regarding police activities.  The Strathmoor mayor is the direct supervisor to the chief of police and shares the right to control such details. *Cornell Depo*., p. 15; *Reynolds Depo*., p. 5-6. In fact, the chief "answer[s] to nobody else but" the Strathmoor mayor. *Reynolds*, p. 6. Whether the officers were patrolling Strathmoor or Kingsley, it was Strathmoor officials who directed their activities. *Cornell Depo.*, pp. 60-61.

Because Strathmoor provided police services to Kingsley, Breuer notified the chief whenever she or one of her residents lodged complaints.  On October 25, 2003, Breuer called Chief Reynolds complaining about Arnold's son and his teenage friends.  The chief then dispatched Wilder to investigate the problem. *Wilder Depo*., pp.119-20; *Reynolds Depo*., pp. 33-34.  After the incident, Cornell and Reynolds instructed Wilder to stay away from Arnold's house and even told him not to patrol Kingsley at all. *Wilder Depo*., pp. 93-95;  *Reynolds Depo*., p. 62.   Eventually, Mayor Cornell asked Wilder to give up his keys and Chief Reynolds notified Wilder of his termination. *Wilder Depo*., pp. 93; *Reynolds Depo.,* p. 59.  No Kingsley official directed any of Wilder's activities.  When Kingsley decided that it did not want Wilder patrolling its city, Kingsley officials notified Strathmoor. It was Chief Reynolds who had to implement that decision. *Reynolds Depo*., p. 61-62; *Wilder Depo.,* pp. 94-95. While Wilder states that he believed Breuer to be in his "chain of command," there is no record evidence to support his admittedly subjective belief. *Wilder Depo*., p. 114.  In fact, Wilder acknowledges that no one ever told him that Breuer could direct his activities. *Id.*

5

Arnold argues that Kingsley has a policy of inadequately training police officers and that the lack of proper training led to the injuries for which she seeks redress in this lawsuit. *See* Complaint (DN 1), ¶ 59. Kingsley can be held liable for Wilder's conduct only if Arnold's injuries were the result of an unconstitutional policy or custom of *Kingsley*. *See Monell v. Dept. of Social Services,* 43 U.S. 658, 98 S.Ct.2018, 56 L.Ed.2d 611 (1978). Because Wilder was not a Kingsley employee, Kingsley had no duty to train, supervise or counsel him. Wilder simply was not acting pursuant to any custom or policy of Kingsley. Accordingly, we will grant the defendants' motion for summary judgment on the failure to train, supervise and counsel claims.

II.

Similarly, Arnold's state law claims against Kingsley, which are based on a theory of vicarious liability, fail. Arnold has asserted various claims against Kingsley for assault and outrage, as well as direct common law claims for negligent hiring, supervision and retention. *See* Complaint (DN 1), ¶¶ 42, 46, 50, 53, 56, 64-78. All of these claims rest on Arnold's assumption that Kingsley employed or otherwise controlled Officer Wilder's activities while serving on the Strathmoor Police Department. As previously discussed, the evidence in the record clearly establishes that Wilder was not an employee of Kingsley. Thus, we will grant Kingsley's motion for summary judgment on all the state law claims mentioned above.

III.

Arnold also asserts two claims against Breuer in her individual capacity.

A. Abuse of Process

Arnold claims that Breuer committed the tort of abuse of process when she testified, under

subpoena, in her criminal case. There are two necessary elements for a successful abuse of process claim. First, there must be an ulterior purpose; and second, there must be a willful act in the use of the process not proper in the regular conduct of the proceeding. *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998).

Arnold identifies the ulterior purpose as Breuer's desire to shield herself and Kingsley from civil liability stemming from the altercation between Arnold and Wilder. Arnold further argues that Breuer lied on the witness stand in order to obtain a conviction against Arnold. *See* Plaintiff's Response (DN 46), p. 11. Arnold contends that the "criminal trial was a concerted effort of which Breuer was a significant part" and also references "Breuer's initiation of the events that culminated in the arrest and prosecution." *Id.* at 10-11. Breuer's initial phone call to Chief Reynolds is not relevant to the analysis. She complained regarding rowdy children playing in the neighborhood. Arnold was arrested on charges of Disorderly Conduct, two counts of Assault 3rd Degree, Resisting Arrest and Escape 2nd Degree. The altercation between Arnold and Wilder is a separate incident from the events prompting the initial phone call. No charges were brought against the children. The charges against Arnold stemmed from *her interaction with Wilder*. She was not prosecuted for the children's behavior, which prompted Breuer's phone call. Thus, the only role played by Breuer in the criminal trial was that of a testifying witness.

Accordingly, the relevant alleged "willful act" is the act of testifying. Arnold cites no cases where a fact witness testifying under subpoena in a criminal trial was found liable for abuse of process in a civil suit subsequently initiated by the criminal defendant. Absent any direct authority for such conclusion, we find that the present situation does not amount to an abuse of the legal process. A contrary holding would allow any criminal defendant who challenges the testimony of an adverse

7

witness to sue that witness for abuse of process.

"The cause of action for abuse of process has been defined as 'the technical designation of the irregular or wrongful employment of a judicial proceeding.'" *Raine v. Drasin,* 621 S.W.2d 895, 902 (Ky. 1981) (quoting *Stoll Oil Refining Co. v. Pierce*, 337 S.W.2d 263, 366 (1970)). "[A]buse of process is the employment of legal process for some purpose other than that which it was intended by the law to effect." *Id.* Breuer's participation as a witness, regardless of her truthfulness, simply does not fit within this definition of abuse of process. She did not "employ" or "use" the process in the manner that is inherent in the tort. *See, e.g., Flynn v. Songer*, 399 S.W.2d 491 (Ky. 1966) (defendant initiated the plaintiff's arrest by filing a criminal complaint and supporting affidavit with the intent to pressure plaintiff to release the attachment on defendant's wages); *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998) (defendants employed judicial proceedings when they appealed a county planning commission's decision regarding a zoning issue).

> Abuse of process
>
> usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

W. Page Keeton, et al., *Prosser and Keeton on Torts* 898 (5th ed. 1984). Breuer did not initiate or employ the legal proceedings against Arnold. She merely participated as a fact witness, testifying under subpoena. The record is completely devoid of any evidence that Breuer attempted to coerce Arnold, extort anything from her, or use the criminal proceedings as a "club" against Breuer.[1] In fact,

---

[1] Arnold mentions that Dewey Cornell, the mayor of Strathmoor, attempted to induce her into entering an agreement dismissing the charges against her. This is irrelevant to the instant motion, however, because there is no evidence connecting Breuer to Cornell's action. While the

Breuer, mayor of a sixth-class city, played no official role and had no coercive power over Arnold during the pendency of her criminal proceedings in Jefferson County Court. Accordingly, Breuer did not abuse a process over which she had no authority or control. Beyond mere speculation, Arnold has provided no evidence that Breuer colored her testimony to assist in obtaining a conviction against Arnold and thereby avoid subsequent civil liability.

### B. Intentional Infliction of Emotional Distress

Arnold has also asserted a claim for intentional infliction of emotional distress (IIED) against Breuer in her individual capacity. Breuer contends that this claim must be dismissed because IIED is a "gap-filler" that remedies the plaintiff's emotional distress when no other tort sufficiently compensates the plaintiff's injury. *See Brewer v. Hillard*, 15 S.W.3d 1, 8 (Ky.App. 2000). In the alternative, Breuer argues that her actions in calling the police and testifying in Arnold's criminal trial do not rise to the level of being "extreme and intolerable" as required under Kentucky law. *See, e.g., Wilson v. Lowe's Home Center*, 75 S.W.3d 229, 238 (Ky.App. 2001).

In her response, Arnold completely fails to respond to Breuer's argument. In fact, Arnold does not even mention the IIED claim. To survive a motion for summary judgment, the non-moving party must present some evidence from which the court may conclude that there is a genuine issue of material fact. "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp.*, 822 F.2d 1432,1435 (6th Cir. 1987). Arnold has presented no evidence whatsoever on this claim; therefore, the court will

---

agreement purported to release all defendants from civil liability, Arnold has produced nothing that ties Breuer to the Cornell's action or establishes any improper conspiracy between them.

9

grant Breuer's motion for summary judgment on this IIED claim as well.

For the reasons set forth above, the court will grant the defendants' motion for summary judgment on all claims asserted against them in this action. A separate order will be entered herein this date in accordance with this opinion.

cc: Counsel of Record